DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

SHANIKA GARNETT,                    )
                                    )
              Plaintiff,            )
                                    )
        v.                          )   Civil No. 2013-21
                                    )
LEGISLATURE OF THE VIRGIN           )
ISLANDS, TRUDY FENSTER, PAMELA      )
RICHARDS SAMUEL, RONALD RUSSELL,    )
and AUGUSTIN AYALA,                 )
                                    )
              Defendants.           )
_____    )

ATTORNEYS:

**Karin A. Bentz**
Law Offices of Karin Bentz, P.C.
St. Thomas, VI
        *For Shanika Garnett,*

**Kye Walker**
The Walker Legal Group
Christiansted, VI
        *For the Legislature of the Virgin Islands, Trudy Fenster,*
*Pamela Richards Samuel, Ronald Russell, and Augustin Ayala.*

<u>**MEMORANDUM OPINION**</u>

        Before the Court is the June 28, 2013, motion of Augustin

Ayala ("Ayala"), Trudy Fenster ("Fenster"), Legislature of the

Virgin Islands ("Legislature"), Ronald Russell ("Russell"), and

Pamela Richards Samuel ("Samuel"), (collectively, the

"defendants") to dismiss this matter.

### I.    <u>FACTUAL AND PROCEDURAL HISTORY</u>

        In 2003, Shanika Garnett ("Garnett") began working as

legislative director for Senator Shawn Michael Malone ("Senator

*Garnett v. Legislature, et al.*
Civil No. 2013-21
Memorandum Opinion
Page 2

Malone"). Senator Malone is a member of the Legislature of the
Virgin Islands (the "Legislature"). Garnett's responsibilities
included working with the legislative counsel assigned to draft
legislation for Senator Malone. At the time Garnett began her
employment, Attorney Augustin Ayala ("Ayala") was employed as
legislative counsel for the Legislature. In that capacity, Ayala
was frequently assigned to draft legislation for Senator Malone.

Garnett alleges that starting in 2007, Ayala's behavior
towards her changed. She alleges that: Ayala propositioned her
for sex, asked her out on dates, and offered to pay her bills if
she slept with him. Garnett also claims that Ayala asked to come
over to her home, and told her that she needed a husband and
that he could be the one. Garnett alleges that Ayala began
leaving inappropriate messages for Garnett on her work phone
during working hours. She also claims that Ayala began making
statements like, "You look sexy when you vex," asking her, "what
would it take to get a piece of you," and saying he would
"become Mr. Garnett" if that was what it took to be with her.

Garnett responded by informing Ayala that she was not
interested in him romantically and that his conduct was
inappropriate.

Garnett alleges that after she rejected Ayala, Ayala
retaliated. For example, Garnett claims that when she rejected

*Garnett v. Legislature, et al.*
Civil No. 2013-21
Memorandum Opinion
Page 3

Ayala's advances on April 3, 2009, Ayala was angry and told Garnett that he would deprioritize Senator Malone's work and move it "to the bottom of the pile."

Garnett states that she complained to the then-Senate President, Adlah Foncie Donastorg ("Donastorg"), about Ayala's behavior.  Shortly thereafter, the presidency changed, and Garnett alleges that she verbally complained to the new Senate President, Louis Patrick Hill ("Hill"). She claims that she requested Ayala not be assigned to any of Senator Malone's drafts, so that she could avoid working with Ayala.  Garnett alleges that despite her efforts, Ayala continued his behavior and made disparaging and derogatory comments to her and about her to other employees.  Garnett claims that the Legislature did not take any steps to address her complaints at that time.

Garnett states that, due to the failure of the Legislature to address her complaint, she wrote a letter to Hill regarding Ayala's conduct.  Approximately one month later, the Hill appointed Sharon Peets ("Peets") as the Legislature's affirmative action officer.  Peets was assigned to investigate and report to the Senate President allegations of sexual harassment in the Legislature. Garnett alleges that Peets failed to comply with the Legislature's sexual harassment policy in conducting the investigation.  Garnett also alleges that the

*Garnett v. Legislature, et al.*
Civil No. 2013-21
Memorandum Opinion
Page 4

Legislature never took her complaint seriously, and that its investigation was never completed.  During the pendency of the discrimination investigation, the Senate President changed to Ronald Russell ("Russell.")

Thereafter, in January of 2011, Garnett filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC").  Garnett states that the Legislature never responded to the complaint in the EEOC. Thereafter, the EEOC issued a determination which found that the Legislature had violated Title VII of the United States Code by engaging in sex discrimination. A copy of the EEOC's determination was sent to Russell.

Garnett alleges that defendants Pamela Richard Samuel ("Samuel") and Trudy Fenster ("Fenster") worked for Russell and reported to Russell directly.  Garnett claims that following the EEOC's determination, Fenster and Samuel met with her.  She alleges that Fenster and Samuel told her that her sexual harassment complaint was baseless and without merit.  Garnett claims that following this meeting she was so upset that she sought help from a therapist.

Following the meeting, Garnett alleges, Fenster continued to assign Ayala to draft legislation for Senator Malone.

*Garnett v. Legislature, et al.*
Civil No. 2013-21
Memorandum Opinion
Page 5

Garnett claims that Ayala drafted sub-par legislation, and that Senator Malone blamed Garnett.

On March 8, 2013, Garnett filed the instant complaint (the "Complaint").  The Complaint contains twelve claims: (1) Sexual harassment in violation of Title VII; (2) sexual harassment in violation of the Virgin Islands Sexual Harassment Act; (3) negligent supervision and training; (4) civil conspiracy; (5) intentional infliction of emotional distress; (6) violation of the Legislature's sexual harassment policy and rules; (7) action for injunctive relief; (8) prima facie tort; (9) violation of Section 1981; (10) retaliation (Title VII); (11) retaliation (Virgin Islands Sexual Harassment Act); and (12) assault.

Thereafter, on June 28, 2013, the defendants filed the instant motion to dismiss.  The defendants' motion seeks dismissal of Counts One, Two, Three, Four, Five, Six, Eight, Nine, Eleven, and Twelve.

## II.  **DISCUSSION**

When reviewing a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint "in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Court must accept as true all of the factual allegations contained in the complaint and draw all reasonable

*Garnett v. Legislature, et al.*
Civil No. 2013-21
Memorandum Opinion
Page 6

inferences in favor of the non-moving party. *Alston v. Parker*,
363 F.3d 229, 233 (3d Cir. 2004).

A complaint may be dismissed for "failure to state a claim
upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).
"[A] plaintiff's obligation to provide the grounds of his
entitlement to relief requires more than labels and conclusions,
and a formulaic recitation of the elements of a cause of action
will not do." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555
(2007).

The Supreme Court in *Bell Atlantic v. Twombly*, 550 U.S. 544
(2007), set forth the "plausibility" standard for overcoming a
motion to dismiss and refined this approach in *Ashcroft v.
Iqbal*, 556 U.S. 662 (2009). The plausibility standard requires
the complaint to allege "enough facts to state a claim to relief
that is plausible on its face." *Twombly*, 550 U.S. at 570. A
complaint satisfies the plausibility standard when the factual
pleadings "allow[] the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged." *Iqbal*,
556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This standard
requires showing "more than a sheer possibility that a defendant
has acted unlawfully." *Id.* A complaint which pleads facts
" 'merely consistent with' a defendant's liability, . . . 'stops
short of the line between possibility and plausibility of

*Garnett v. Legislature, et al.*
Civil No. 2013-21
Memorandum Opinion
Page 7

"entitlement of relief." ' " *Id.* (citing *Twombly*, 550 U.S. at

557).

To determine the sufficiency of a complaint under the

plausibility standard, the Court must take the following three

steps[1]:

> First, the court must "tak[e] note of the
> elements a plaintiff must plead to state a
> claim." Second, the court should identify
> allegations that, "because they are no more
> than conclusions, are not entitled to the
> assumption of truth." Finally, "where there
> are well-pleaded factual allegations, a
> court should assume their veracity and then
> determine whether they plausibly give rise
> to an entitlement for relief.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)

(quoting *Iqbal*, 556 U.S. at 674, 679).

### III. <u>ANALYSIS</u>

To survive the defendants' motion to dismiss, Garnett must

plead sufficient facts to state a plausible claim. The

defendants seek to dismiss ten of the twelve counts in the

Complaint: (1) Sexual harassment in violation of Title VII; (2)

sexual harassment in violation of the Virgin Islands Sexual

Harassment Act; (3) negligent supervision and training; (4)

civil conspiracy; (5) intentional infliction of emotional

---

[1] *Iqbal* describes the process as a "two-pronged approach" but the Supreme
Court took note of the elements a plaintiff must plead to state a claim
before proceeding to its two-step approach. Accordingly, the Third Circuit
has deemed the process a three step approach. *See Santiago*, 629 F.3d at 130.

*Garnett v. Legislature, et al.*
Civil No. 2013-21
Memorandum Opinion
Page 8

distress; (6) violation of the Legislature's sexual harassment policy and rules; (8) prima facie tort; (9) violation of Section 1981; (11) retaliation (Virgin Islands Sexual Harassment Act); and (12) assault.

## A. Count One: Title VII

In Count One, Garnett alleges that the Legislature violated Title VII of the Civil Rights Act of 1964 ("Title VII"). Title VII makes it unlawful for an employer ". . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The United States Supreme Court has recognized two causes of action for sexual harassment that an aggrieved employee may bring under Title VII: (1) *quid pro quo* harassment, when a supervisor uses apparent or real authority to elicit sexual favors from an employee, and (2) hostile work environment, if the harassment was so pervasive that it altered the conditions of employment. *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65-67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (holding that Title VII prohibits the creation of a hostile work environment); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed. 2d. 295 (1993) (holding that plaintiff bringing hostile

*Garnett v. Legislature, et al.*
Civil No. 2013-21
Memorandum Opinion
Page 9

work environment claim must show discrimination was so pervasive that terms and conditions of employment were altered).

Under Title VII, whether an employer is liable for the harassing employee's actions depends on whether the harasser is a supervisor or merely a co-worker of the victim. *Vance v. Ball State University*, 133 S. Ct. 2434 (2013). An employee is a "supervisor" for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim. *Id.* at 2448. That is, an employee is a supervisor when he or she may hire, fire, suspend, promote, reward, or discipline the complainant. *See id.* at 2444.

Here, Garnett alleges that Ayala engaged in sexual harassment. In fact, she specifically alleges that "Ayala caused the hostile work environment and unwelcome sexual harassment. [Ayala's] acts were malicious, oppressive, and retaliatory. . .." Garnett further claims that she made the Legislature aware of that fact by complaining to Hill.

Significantly, Garnett has not alleged that Ayala had the power to hire, fire, promote, reassign, or make a benefits decision that would affect Garnett. Thus, the Complaint does not provide facts which support an inference that Ayala was a "supervisor" for purposes of Title VII liability. As such,

*Garnett v. Legislature, et al.*
Civil No. 2013-21
Memorandum Opinion
Page 10

Garnett's pleading is deficient as to her Title VII sexual harassment claim.

**B. Counts Two and Eleven: Virgin Islands Sexual Harassment Act[2]**

In Counts Two and Eleven, Garnett alleges that all of the named defendants acted in violation of the Virgin Islands Sexual Harassment Act either by engaging in harassing or retaliatory behavior.

The Virgin Islands Code provides:

The Legislature declares as the public policy of the Government of the Virgin Islands that sexual harassment in employment is a type of sexual discrimination and, as such, constitutes an illegal and undesirable practice that goes against the established constitutional principle that the dignity of a human being is inviolable. Therefore, sexual harassment in employment is prohibited, and the Legislature imposes the responsibilities for its prevention and the penalties for violation as prescribed in this section.

§ 64a Sexual harassment prohibited, 10 V.I.C. § 64a (2006); *see also Canonier v. Mahogany Run Condominium Association*, 54 V.I. 2010, 2011 WL 635295, *2 (V.I. Super. Ct. 2011) (the Virgin Islands Legislature intended to create a private right of action when it enacted Section 64a). The Virgin Islands Code further provides that

"Sexual harassment" means any unwelcome sexual advances or requests for sexual favors or any other verbal or physical

---

[2] Counts Two and Eleven are both brought under the same statute, but against different defendants.  Count Two was brought only as against the Legislature, and Count Eleven was brought against all defendants.  As the counts do not require distinct analyses, they will both be considered together.

*Garnett v. Legislature, et al.*
Civil No. 2013-21
Memorandum Opinion
Page 11

> conduct of a sexual nature when [t]he conduct or advances
> or requests have the purpose or effect of unreasonably
> interfering with an individual's work performance or
> creating an intimidating, hostile, or offensive working
> environment.

§ 64a Sexual harassment prohibited, 10 V.I.C. § 64a(b)(4), §

64a(b)(4)(C).  Thus, to survive a motion to dismiss, a claim of

sexual harassment under the Act must allege: (1) unwanted sexual

advances, requests for sexual favors, or verbal or physical

conduct of a sexual nature; and (2) that either has the purpose

or effect of interfering with an individual's work performance,

or that creates an intimidating, hostile, or offensive working

environment.  *Id.*

Here, Garnett has alleged that Ayala made sexual advances

that were unwelcome.  Specifically, she claims that Ayala made

sexually charged statements to her, including propositioning her

for sex, and offering to pay her bills if she slept with him.

Garnett also alleges that he made disparaging remarks to her and

about her to others when she asked him to stop his overtures.

Furthermore, Garnett alleges that Russell, Samuel, Fenster, and

the Legislature contributed to this hostility by ignoring her

complaints and by intentionally increasing the frequency with

which the harassment occurred.  These allegations could

plausibly support an inference that the defendants created a

*Garnett v. Legislature, et al.*
Civil No. 2013-21
Memorandum Opinion
Page 12

hostile work environment by their conduct. As such, Garnett has

plausibly stated a claim for relief on Counts Two and Eleven.

## C. Count Three: Negligent Supervision and Training

In Count Three, Garnett alleges that the Legislature was

negligent in its training and supervision by failing to train

Ayala on the sexual harassment policy and failing to discipline

him for violating that same policy.

The Restatement (Third) of Agency recognizes the tort of

negligent supervision:

> The type of supervision required by the principal's duty of
> reasonable care, like its relative degree of intensity, are
> functions of the risk posed to third parties and the
> burdens imposed by precautions that the principal may take
> in reference to the risk.

Restatement (Third) of Agency § 7.05, ill. 8.

The elements of a negligent hiring, retention, or

supervision claim are:

> (1) the existence of an employment relationship; (2) the
> employee's incompetence; (3) the employer's actual or
> constructive knowledge of such incompetence; (4) the
> employee's act or omission causing plaintiff's injuries;
> and (5) the employer's negligence in hiring or retaining
> the employee was the proximate cause of the plaintiff's
> injuries.

*Mala v. Marine Serv. Mgmt.*, CIVV. 2006-120, 2009 WL 2170071

(D.V.I. July 20, 2009) (internal quotations omitted) (citing

*Watson v. City of Cleveland,* 202 Fed. Appx. 844, 857 (6th Cir.

2006) (unpublished)); *see also Bell v. University of the V.I.,*

*Garnett v. Legislature, et al.*
Civil No. 2013-21
Memorandum Opinion
Page 13

2003 U.S. Dist. LEXIS 25380, at *8 (D.V.I. 2003) ("[T]he master may subject himself to liability under the rule . . . by retaining in his employment servants who, to his knowledge, are in the habit of misconducting themselves in a manner dangerous to others." (internal citations and quotations omitted)).

Here, the Legislature, in its motion to dismiss, argues that Garnett fails to state a claim because she does not allege that the Legislature had actual or constructive knowledge of the harassment. To the contrary, however, Garnett has alleged numerous occasions when she reported Ayala's conduct to the senate presidents. (Compl. ¶¶ 29-31) Furthermore, Garnett alleges that on at least one occasion, Ayala made demeaning and derogatory comments about Garnett in the presence of Garnett's supervisor and other employees (Compl. ¶ 32). Viewing the facts in a light most favorable to Garnett, the Court finds that Garnett has alleged sufficient facts to state a claim for negligent supervision and training.

**D. Count Four: Civil Conspiracy**

In Count Four, Garnett alleges that Trudy Fenster, Pamela Richards Samuel, and Ronald Russell conspired with the Legislature to 1) tell Garnett that her sexual harassment claim lacked merit and 2) misrepresent to the Equal Employment

*Garnett v. Legislature, et al.*
Civil No. 2013-21
Memorandum Opinion
Page 14

Opportunity Commission that the Legislature was investigating

Garnett's claim.

Under Virgin Islands law, a civil conspiracy "'consists of

an agreement or combination to perform a wrongful act that

results in damage to the plaintiff.' A conspiracy may also

consist of an agreement to do a lawful act by unlawful means."

*Hyatt v. 35 Acres,* 1996 WL 165008 at *4 (D.V.I. Jan. 8,

1996)(quoting *Cooper v. Vitraco, Inc.*, 320 F. Supp. 239, 242-43

(D.V.I. 1970)). The elements of a civil conspiracy claim are:

(1) an agreement, and (2) "concerted action" in furtherance of

that agreement. *See, e.g.*, *Capogrosso v. Sup. Ct. of N.J.*, 588

F.3d 180, 185 (3d Cir. 2009); *Berrios v. Hovic*, 2010 WL 3069480,

at *6 (D.V.I. July 29, 2010).

In *Shomo v. Mugar Enterprises, Inc.*, Civ. No. 2007-154,

2009 WL 3181936 (D.V.I. Sept. 28, 2009), the Court faced a

similar allegation.  In that case, the plaintiff alleged that

her employer and other employees agreed to discriminate against

individuals on the basis of race. *Id.* at *1. In doing so, Shomo

alleged, the defendants had created a civil conspiracy to create

a hostile work environment. *Id.* The Court found that, for

purposes of a civil conspiracy claim, the agreement cannot be

between employees and their employer as "a corporation and its

subsidiaries, agents, and employees, as agents of each other, are incapable of conspiring with each other." *Id.* at *6.

Here, Fenster, Samuel, and Russell were all employees of the Legislature. Garnett claims that as employees of the Legislature, they all conspired with the Legislature to create a hostile work environment. As this Court previously stated in *Shomo*, such a relationship precludes a finding that the defendants "conspired." *Id*. Therefore, Garnett has failed to state a claim for civil conspiracy that is plausible on its face.

**E. Count Five: Intentional Infliction of Emotional Distress**

In Count Five, Garnett alleges that all named defendants engaged in the intentional infliction of emotional distress.

Under Virgin Islands law, a claim of intentional infliction of emotional distress requires "extreme and outrageous conduct intentionally or recklessly causes severe emotional distress . . ." *Smith v. Elias*, 2007 WL 4209701, at *4 (V.I. Super. Ct. 2007). Additionally, "[p]hysical harm is a required element of a claim for negligent infliction of emotional distress in the Virgin Islands." *Ramos v. St. Croix Alumina, L.L.C.*, 277 F. Supp. 2d 600, 604 (D.V.I. 2003) *overruled on other grounds by Miller v. V.I. Hous. Auth.*, CIV. 1998/0089, 2005 WL 1353395 (D.V.I. June 3, 2005). "It is extremely rare to

*Garnett v. Legislature, et al.*
Civil No. 2013-21
Memorandum Opinion
Page 16

find conduct in the employment context that will rise to the
level of outrageousness necessary to provide a basis for
recovery for the tort of intentional infliction of emotional
distress. Discrimination alone does not state a claim for
intentional infliction of emotional distress." *Id.*

Here, Garnett alleges that Ayala engaged in extremely
blatant sexual advances, which included propositioning her for
sex and asking if he could come to her house.  Garnett also
alleges that she notified the Legislature of Ayala's behavior,
and that thereafter the Legislature failed to properly
investigate her complaints.  In addition, Garnett claims that
Fenster and Samuel met with her, told her that her complaints
had no merit, and then intentionally assigned Senator Malone's
work to Ayala to force Garnett to work with him.

The Court notes it is unclear that this is outside the
bounds of "discrimination alone," such that it would constitute
the extreme and outrageous conduct required for this claim.
Assuming *arguendo*, however, that it does, the claim must still
fail.  Conspicuously absent from the Complaint is any allegation
that Garnett suffered any physical harm. Physical harm is a
required element in a claim for intentional infliction of
emotional distress in the Virgin Islands. *Speaks v. Gov't of
Virgin Islands*, Civ. No. 2006-168, 2009 WL 167330, at *8 (D.V.I.

*Garnett v. Legislature, et al.*
Civil No. 2013-21
Memorandum Opinion
Page 17

Jan. 14, 2009). Here, no physical harm is alleged. As such, Garnett's claim for intentional infliction of emotional distress is fatally deficient.

## F. Count Six: Violation of Legislature's Sexual Harassment Policy and Rules

In Count VI of the Complaint, Garnett asserts a claim for damages based on the Legislature's violation of its internal policies and rules. However, Garnett does not list recognized cause of action underlying this count. She does not claim that the policies constitute Virgin Islands or Federal law, nor does she allege that the policies were part of her employment contract. The Court is unable to find any support for either proposition in this case. To the contrary, the majority of cases on the topic that the Court has found indicate that generally employer violations of their own "handbooks" or internal personal rules are not actionable, absent some indication that those rules were intended to create a contract with employees. *See, e.g.*, *Bethea v. Merchants Commercial Bank*, 2011 WL 4861873, at *8 (D.V.I. Oct. 13, 2011). As such, the Court finds that the pleading as to this claim is deficient.

## G. Count Eight: Prima Facie Tort

Count VIII alleges a cause of action for prima facie tort against all defendants. "Prima facie tort is recognized as a cause of action in the Virgin Islands." *Gov't Guar. Fund. of*

*Garnett v. Legislature, et al.*
Civil No. 2013-21
Memorandum Opinion
Page 18

*Fin. v. Hyatt Corp.*, 955 F. Supp. 411, 463 (D.V.I. 1997); *see*

*also* Restatement (Second) of Torts § 870. However, "no claim for

prima facie tort lies if the action complained of fits within

another category of tort." *Id*.

Here, Garnett asserts numerous tort claims. The actions

which Garnett complains of fit within other tort categories. The

Court will not list every possible tort claim that could have

been made.  That said, as discussed above, the discrimination

allegations in this case as relates to all defendants other than

Ayala are best characterized as negligence claims.  The claims

against Ayala himself are within the category of torts

contemplated by intentional infliction of emotional distress, or

perhaps even defamation or slander given the allegations he made

disparaging comments about her to her employers.

As the allegations in this case fit within defined tort

categories, Garnett's claim of prima facie tort must be

dismissed.

**H. Count Nine: Section 1981**

In Count Nine, Garnett alleges that Russell, Fenster, and

Samuel violated Section 1981 of Title 42 in the United States

Code.

*Garnett v. Legislature, et al.*
Civil No. 2013-21
Memorandum Opinion
Page 19

Section 1981 of Title 42 of the United States Code provides

that

> All persons within the jurisdiction of the United States
> shall have the same right in every State and Territory to
> make and enforce contracts, to sue, be parties, give
> evidence, and to the full and equal benefit of all laws and
> proceedings for the security of persons and property as is
> enjoyed by white citizens, and shall be subject to like
> punishment, pains, penalties, taxes, licenses, and
> exactions of every kind, and to no other.
>
> . . .
>
> The rights protected by this section are protected against
> impairment by nongovernmental discrimination and impairment
> under color of State law.

42 U.S.C. § 1981.

Garnett alleges that Russell, Fenster, and Samuel, acting

in their official capacity and under color of state law,

intentionally impaired Garnett's rights under Section 1981 to

enjoy the "benefits, privileges, terms, and conditions of the

contractual relationship" she had with her employer. (Compl. ¶

131-133.)

The Legislature argues that this claim is time-barred.

Indeed, "[w]hen addressing section 1981 claims, federal courts

borrow the statute of limitations that applies to personal

injury claims in the state or territory." *Martin v. Ritz*

*Carlton, Inc.*, CIV. 2002-162, 2002 WL 31927518 (D.V.I. Dec. 30,

2002). Here, it is not clear that the conduct Garnett complains

of has ceased. In considering a motion to dismiss, the Court is required to draw all reasonable inferences in the plaintiff's favor. Garnett alleges the conduct is "ongoing," and the Court must accept this as true.

**J. Count Twelve: Assault**

In Count Twelve, Garnett alleges that Ayala and the Legislature are liable for assault.

A civil assault claim in the Virgin Islands has two elements: (1) the defendant acted intending to cause harmful or offensive contact with the person of another, or imminent apprehension of such contact; and (2) the plaintiff is thereby put in such imminent apprehension. *McDonald v. Davis*, 51 V.I. 573, 2009 WL 580456, at *10 (D.V.I. March 19, 2013).

> Imminent apprehension means that the plaintiff believes that the act may result in imminent contact unless prevented from so resulting by the plaintiff's self-defensive action or by his flight or by the intervention of some outside force. Words do not make the actor liable for assault unless together with other acts or circumstances they put the other in reasonable apprehension of an imminent harmful or offensive contact with his person.

*Id.* (internal citations and quotations omitted).

Here, Garnett asserts that she brings an assault claim against Ayala in his individual and official capacities and against the Legislature because Garnett apprehended an imminent offensive contact every time Ayala leaned in to Garnett. Each

"allegation" in Count Twelve itself (those not incorporated by reference from previous counts) is a bald legal conclusion. None are facts.  As such, they must be disregarded.

Turning to the facts in the remainder of the Complaint, the Court notes that there is no factual allegation supporting the inference that Ayala intended his conduct to cause imminent apprehension of offensive contact.  Simply stating that "[d]efendants, and each of them, acted with an intent to cause an imminent, unwelcome fear of an offensive contact," (Compl. ¶ 156,) is not enough. *See Santiago*, 629 F.3d at 130 (instructing that courts are to disregard formulaic legal conclusions). As the first element of assault cannot be gleaned from the *factual* allegations in the Complaint, the assault claim is fatally deficient.

## IV.  CONCLUSION

It is evident that as the Complaint currently stands, several of its claims are deficient.  Where a complaint is subject to dismissal, district courts are instructed to provide the plaintiff with leave to amend even if the plaintiff has not requested such leave. *See Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). The only exception to this general rule is where the district court finds that amendment would be inequitable or futile. *See id.*

*Garnett v. Legislature, et al.*
Civil No. 2013-21
Memorandum Opinion
Page 22

     The Court finds that Counts Four and Eight cannot be cured by amendment.  Neither count could be made viable by the inclusion of additional facts.  As a matter of law, they simply cannot stand.  As such, the Court will grant the defendants' motion to dismiss as to those counts.  The other counts of the Complaint which are deficient may be cured with the addition of certain facts.  As such, as to those counts, Garnett will be given leave to amend her Complaint.

     For the reasons discussed above, the Court will grant the Legislature's motion to dismiss in part and will deny in part.

     An appropriate order follows.